Slip Op. No. 18-176

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **QINGDAO QIHANG TYRE CO., LTD.,** et al., <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | **Before: Timothy C. Stanceu, Chief Judge** <br><br> **Consol. Court No. 16-00075** |

**OPINION**

[Sustaining decisions in a determination issued in response to court order in a review of an antidumping duty order on off-the-road tires from the People's Republic of China]

Dated: December 21, 2018

*Ned H. Marshak*, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, D.C., for plaintiffs Qingdao Qihang Tyre Co., Ltd. and Qingdao Free Trade Zone Full-World International Trading Co., Ltd. With him on the brief were *Brandon M. Petelin* and *Jordan C. Kahn*.

*Richard P. Ferrin*, Drinker Biddle & Reath, LLP, of Washington, D.C., for plaintiffs Trelleborg Wheel Systems (Xingtai) Co., Ltd., Xuzhou Xugong Tyres Co., Ltd., Xuzhou Hanbang Tyre Co., Ltd., and Armour Rubber Co. Ltd. With him on the brief was *Douglas J. Heffner*.

*R. Kevin Williams*, Clark Hill PLC, of Chicago, Ill., for plaintiff Weihai Zhongwei Rubber Co., Ltd.

*John J. Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief was *Paul K. Keith*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Stanceu, Chief Judge: Plaintiffs contested an administrative determination the

International Trade Administration, U.S. Department of Commerce ("Commerce" or the

"Department"), issued to conclude a periodic review of an antidumping duty order on off-the-road ("OTR") tires from the People's Republic of China ("China" or the "PRC").[1]

Before the court is the determination (the "Remand Redetermination") Commerce issued in response to this court's opinion and order in *Qingdao Qihang Tyre Co. v. United States*, 42 CIT __, 308 F. Supp. 3d 1329 (2018) ("*Qingdao Qihang*"). *See Final Results of Redeterm. Pursuant to Court Remand* (July 24, 2018), ECF No. 74 ("*Remand Redeterm.*"). The Remand Redetermination: (1) under protest, recalculates export price ("EP") and constructed export price ("CEP") for the mandatory respondents to eliminate its previous downward adjustments for Chinese irrecoverable value-added tax ("VAT"); (2) redetermines a surrogate value for inputs of reclaimed rubber production inputs; and (3) recalculates the surrogate value for foreign inland freight. *Remand Redeterm.* 2. It then recalculates the margins for the two mandatory respondents and the reviewed, but not individually examined, "separate rate respondents." *Id.* at 21. The court sustains the three decisions, and the redetermined margins, to which no party objects.

### I. BACKGROUND

The background of this consolidated action is set forth in the court's prior Opinion and Order, which is summarized and supplemented herein. *See Qingdao Qihang*, 42 CIT at __, 308 F. Supp. 3d at 1333-34.

---

[1] Consolidated under the lead case, *Qingdao Qihang Tyre Co. v. United States*, Court No. 16-00075, are *Qingdao Free Trade Zone Full-World Int'l Trading Co. v. United States*, Court No. 16-00076; *Trelleborg Wheel Systems (Xingtai) Co. v. United States*, Court No. 16-00077; *Xuzhou Xugong Tyres Co. v. United States*, Court No. 16-00079; and *Weihai Zhongwei Rubber Co. v. United States*, Court No. 16-00084. *See* Order (Aug. 31, 2016), ECF No. 24.

A. The Agency Decision Contested in this Litigation

The contested administrative decision ("Final Results"), which concluded the sixth periodic administrative review of certain pneumatic off-the-road tires from China, was published as *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 23,272 (Int'l Trade Admin. Apr. 20, 2016) ("*Final Results*"). Incorporated by reference in the Final Results is a final "Issues and Decision Memorandum" containing explanatory discussion. *Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review: Certain New Pneumatic Off-the-Road Tires from the People's Republic of China; 2013-2014* (Int'l Trade Admin. Apr. 12, 2016) (P.R. Doc. 334), *available at* https://enforcement.trade.gov/frn/summary/prc/2016-09165-1.pdf (last visited Dec. 18, 2018) ("*Final I&D Mem.*").

B. The Parties in this Consolidated Case

The plaintiffs in this litigation include the two mandatory respondents in the sixth review, Xuzhou Xugong Tyres Co., Ltd., Armour Rubber Co. Ltd., and Xuzhou Hanbang Tyre Co., Ltd. (collectively, "Xugong"), which Commerce treated as a single entity for purposes of the review, and Qingdao Qihang Tyre Co., Ltd. ("Qihang"). The other plaintiffs are the following reviewed, but not individually examined, separate rate respondents: Qingdao Free Trade Zone Full-World International Trading Co., Ltd., Trelleborg Wheel Systems (Xingtai) Co., Ltd., and Weihai Zhongwei Rubber Co., Ltd.[2]

---

[2] Titan Tire Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC were defendant-intervenors in this litigation, *see* Order (May 31, 2016), ECF No. 18, but withdrew on September 29, 2017. *See* Order (Sept. 29, 2017), ECF No. 66.

C. Procedural History

Commerce issued an antidumping duty order (the "Order") on certain off-the-road tires from China (the "subject merchandise") in 2008. *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Notice of Amended Final Affirmative Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 73 Fed. Reg. 51,624 (Int'l Trade Admin. Sept. 4, 2008). Commerce initiated the review at issue in this litigation, which was the sixth administrative review of the Order, on October 30, 2014. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 79 Fed. Reg. 64,565 (Int'l Trade Admin. Oct. 30, 2014). The sixth administrative review pertained to entries of subject merchandise made during the period of review of September 1, 2013 through August 31, 2014. *Final Results*, 81 Fed. Reg. at 23,272.

Commerce published the Final Results on April 20, 2016. *Id.* In the Final Results, Commerce assigned individually-determined weighted-average dumping margins to Xugong and Qihang. *Id.* at 23,273. Having selected these exporters/producers of OTR tires as "mandatory" respondents, i.e., respondents it intended to examine individually, Commerce assigned a weighted-average dumping margin of 65.33% to Xugong and a weighted-average dumping margin of 79.86% to Qihang in the Final Results. *Id.* Commerce assigned a weighted average of these two margins, 70.55%, to respondents that it did not select for individual examination but that Commerce found to have qualified for a "separate rate" based on demonstrated independence from the government of China. *Id.*

The Department submitted the Remand Redetermination to the court on July 24, 2018. *Remand Redeterm*. Plaintiffs collectively filed comments on the Remand Redetermination on August 10, 2018. All Plaintiffs' Comments on Remand Redetermination (Aug. 10, 2018), ECF

No. 76 ("Pls.' Comments"). The United States filed a reply to plaintiffs' comments on August 24, 2018. Defendant's Response to Comments on Remand Redetermination (Aug. 24, 2018), ECF No. 78 ("Def.'s Reply"). The plaintiffs in this litigation submitted a single set of comments in support of the decisions made in the Remand Redetermination. Pls.' Comments 1. Defendant United States also supports the Remand Redetermination. Def.'s Reply 1.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2012),[3] pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 (the "Tariff Act"), *as amended* 19 U.S.C. § 1516a, including an action contesting a final determination that Commerce issues to conclude an antidumping duty administrative review. In reviewing a final determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

### B. The Court's Rulings in *Qingdao Qihang*

In *Qingdao Qihang*, the court directed Commerce to submit a redetermination that addresses the following three decisions in the Final Results, each of which the court held unlawful: (1) downward adjustments Commerce made to the prices of Xugong and Qihang that are used to determine EP and CEP, to account for Chinese irrecoverable VAT, *Qingdao Qihang*, 42 CIT at __, 308 F. Supp. 3d at 1335-47; (2) the surrogate value for the reclaimed rubber manufacturing input, which Commerce based on Global Trade Atlas import data from Thailand,

---

[3] Citations to the United States Code are to the 2012 edition.

*id.*, 42 CIT at __, 308 F. Supp. 3d at 1347-49; and (3) the surrogate value Commerce obtained from the World Bank's *Doing Business 2015: Thailand* report for valuing foreign inland freight, *id.*, 42 CIT at __, 308 F. Supp. 3d at 1349-52.

### C. The Department's Remand Redetermination

In the Remand Redetermination, Commerce, under protest, recalculated EP and CEP for Xugong's and Qihang's sales without making downward adjustments for Chinese irrecoverable VAT. *Remand Redeterm.* 8. As a justification for its protest, Commerce stated that "[w]e respectfully disagree with the Court's finding that Commerce impermissibly construed section 772(c)(2)(B) of the Act [19 U.S.C. § 1677a(c)(2)(B)] with respect to irrevocable [*sic*] VAT, and maintain that our current practice, as described *supra*, is consistent with the statute and thus in accordance with law." *Id.* As part of the description of the current practice, Commerce stated that "[i]n the *Final Results*, we determined that adjusting for irrecoverable VAT, which equates to an export tax, is consistent with section 772(c)(2)(B) of the Act, as it reduces the gross U.S. price charged to the customer (which would otherwise include the unrefunded VAT in the amount charged to the U.S. customer) to a net price received." *Id.* at 5. Commerce added that "[m]oreover, this deduction is consistent with Commerce's longstanding policy that dumping margin calculations be tax-neutral." *Id.*

The court sustains the Department's decision to correct its calculations of EP and CEP by removing its downward adjustments for "irrecoverable VAT." While sustaining this decision, the court does not sustain or otherwise approve the reasoning Commerce included in the Remand Redetermination in an attempt to convince the court that the decision on VAT in *Qingdao Qihang* was incorrect.

As *Qingdao Qihang* explained, the VAT at issue in this case is not the type of tax described by 19 U.S.C. § 1677a(c)(2)(B), which addresses an "export tax, duty, or other charge imposed by the exporting country on the exportation of the subject merchandise to the United States." The record in this case does not support the notion that China imposed an export tax, or anything resembling one, on the subject merchandise.

The tax at issue here is a domestic value-added tax that, as Commerce itself does not dispute, is included in the prices of certain materials used in producing subject merchandise. *See Final I&D Mem.* at 22. This "input" VAT is included in the price of materials used to make OTR tires, and the record does not demonstrate that it is incurred only on production for export sales. *See Qingdao Qihang*, 42 CIT at __, 308 F. Supp. 3d at 1337 ("The questionnaire responses of both mandatory respondents constitute record evidence that the VAT incurred by these respondents resulted from purchases of some of the material inputs used in OTR tire production." (citations omitted)). That some of this value-added tax might not be fully refunded upon subsequent exportation of the finished good does not convert this value-added tax to an export tax, duty, or other charge imposed on the exportation of the good. There is no evidentiary support in the record for the proposition that irrecoverable VAT does not occur on domestic sales. Nevertheless, Commerce appears to presume, without evidentiary support, that Chinese irrecoverable VAT "amounts to an export tax, duty, or other charge imposed on exported merchandise *that is not imposed on domestic sales*." *Id.*, 42 CIT at __, 308 F. Supp. 3d at 1343 n.8 (emphasis in *Qingdao Qihang*) (quoting *Final I&D Mem.* at 22); *see Jiangsu Senmao Bamboo and Wood Indus. Co., Ltd. v. United States*, 42 CIT __, __, 322 F. Supp. 3d 1308, 1344 (2018).

As *Qingdao Qihang* also explained, Congress was familiar with the concepts of recoverable VAT and, necessarily, of irrecoverable VAT, and addressed them in provisions of the Tariff Act other than 19 U.S.C. § 1677a(c)(2)(B).  Simply stated, recoverable VAT, in certain circumstances (not present here), may reduce a dumping margin.  But Congress did not intend that VAT, whether or not recoverable, would ever *increase* a dumping margin.  In § 1677a(c)(2)(B), Congress addressed export taxes, duties, and other charges imposed on the exportation of the good, not value-added taxes, which Congress addressed elsewhere in the statute, using distinctly different language.  Further, *Qingdao Qihang* explained why the Department's "tax-neutral" rationale is misguided.  *See Qingdao Qihang*, 42 CIT at __, 308 F. Supp. 3d at 1342-44.

Reconsidering its surrogate values for reclaimed rubber, Commerce determined that Romanian import price data, obtained from the Global Trade Atlas, constituted the best available information.  *Id.* at 11-13.  Commerce also redetermined its surrogate value for foreign inland freight, using the World Bank's *Doing Business 2016: Thailand* report in place of the 2015 version of that report that Commerce used in the Final Results.  *Id.* at 17-20.

The changes made from the Final Results lowered Qihang's dumping margin from 79.86% to 13.93% and Xugong's dumping margin from 65.33% to 23.45%.  *Id.* at 21.  Because the margin in the Final Results for separate rate respondents not individually examined was the weighted average of the dumping margins calculated for Qihang and Xugong, the Department recalculated that margin in the Remand Redetermination to 20.03%.  *Id.*  These decisions comply with the court's decision in *Qingdao Qihang*, are supported by the record evidence, and are in accordance with law.

### III. CONCLUSION

For the reasons discussed above, the court sustains the Remand Redetermination. Judgment will enter accordingly.

                                              /s/ Timothy C. Stanceu
                                              Timothy C. Stanceu, Chief Judge

Dated: December 21, 2018
        New York, New York